

Pro Se 14 (INND Rev. 2/20)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

*[This form is for prisoners to sue for civil rights violations. NEATLY print in ink (or type) your answers.]*

Lukas Lee Schoch

[You are the **PLAINTIFF**, print your full name on this line.]

v.

IdoC

[The **DEFENDANT** is who you are suing. Put ONE name on this line. List ALL defendants below, including this one.]

Case Number 3:22-CV-474-DRL-MGG

[For a new case in this court, leave blank.
The court will assign a case number.]

*[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]*

## PRISONER COMPLAINT

| # | Defendant's Name and Job Title | Work Address |
|---|---|---|
| 1 | [Put the defendant named in the caption in this box.]<br>IdoC | 302 west washington street, Rm E-334, Indianapolis, IN 46204 |
| 2 | [Put the names of any other defendants in these boxes.]<br>James Basinger, John Adam Ferguson | 302 west washington street, Rm E-334, Indianapolis, IN 46204 |
| 3 | John Galipeau, Kenneth gan, Kenneth watts, Major Cornett, Joseph Forler, Phil Sonnenberg | 5501 South 1100 west, westville, IN 46391 |

*[If you are suing more defendants, attach an additional page. Number each defendant. Put the name, job title, and work address of each defendant in a separate box as shown here.]*

1. How many defendants are you suing? _____9_____

2. What is the name and address of your prison or jail? Westville correctional Facility (WCC) 5501 South 1100 west westville, IN 46391

3. Did the event you are suing about happen there? ☑Yes. ◯ No, it happened at: _____

4. On what date did this event occur? ~~04/2022~~ 04/29/2022

*[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]*

20

Pro Se 14 (INND Rev. 2/20)

## CLAIMS and FACTS

DO: Write a short and plain statement telling what each defendant did wrong.

DO: Use simple English words and sentences.

**DO NOT:** Quote from cases or statutes, use legal terms, or make legal arguments.

DO: Explain when, where, why, and how each defendant violated your rights.

DO: Include every fact necessary to explain your case and describe your injuries or damages.

DO: Number any documents you attach and refer to them by number in your complaint.

**DO NOT:** Include social security numbers, dates of birth, or the names of minors.

DO: Use each defendant's name every time you refer to that defendant.

DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

[*DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.*]

Claims and Facts (continued)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]*

5. When did this event happen?
- ○ Before I was confined.
- ○ While I was confined awaiting trial.
- ☑ After I was convicted while confined serving the sentence.
- ○ Other: _____

6. Have you ever sued anyone for this exact same event?
- ☑ No.
- ○ Yes, attached is a copy of the final judgment OR an additional sheet listing the court, case number, file date, judgment date, and result of the previous case(s).

7. Could you have used a prison grievance system to complain about this event?
- ○ No, this event is not grievable at this prison or jail.
- ○ Yes, I filed a grievance and attached is a copy of the response from the final step.
- ☑ Yes, this event was grievable, but I did not file a grievance because I ~~~~

Submitted 3 grievances in regards to the issue at hand. One on 05/07/2022, 05/14/2022, and on 05/21/2022.

8. If you win this case, what do you want the court to order the defendant(s) to do?
[NOTE: A case filed on this form will not overturn your conviction or change your release date.]

I want Financial Relief.

_____

_____

_____

_____

[Initial Each Statement]
- ✓ I will pre-pay the filing fee OR file a prisoner motion to proceed in forma pauperis.
- ✓ I will keep a copy of this complaint for my records.
- ✓ I will promptly notify the court of any change of address.
- ✓ I WILL NOT send more than one copy of any filing to the court.
- ✓ I WILL NOT send summons, USM-285, or waiver forms to the clerk.
- ✓ I declare under penalty of perjury that the statements in this complaint are true.

I placed this complaint in the prison mail system on ____/____/20____ at _____ am/pm.
[Do not fill in this date and time until you give the complaint to prison officials to send to the court.]

_____Lukas Lee Schoch_____        ____286137____
Signature                                      Prisoner Number

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]

United States District Court
Northern District of Indiana
South Bend Division

Lukas Schoch
      Plaintiff )
    V. )
I.D.O.C. )
Robert Carter, Jr., )
James Basinger, )
~~Robert Bugher~~, )
John Galipeau, )
Kenneth Gann, )
Kenneth Watts, )
Major Cornett, )
Joseph Farley, )
Phil Sonnenberg, )
Jon Adam Ferguson )
       )
    Defendants, )

Case no.

## Verified Civil Rights Complaint

### I. Introduction:

This is a civil rights action under 42 U.S.C. §1983 through the 8th Amendment to the U.S. Constitution against agents and/or employees of the IDOC commissioner, in their individual and official capacities and against the commissioner and IDOC.

### II. Parties:

1. Plaintiff, <u>Lukas Schoch</u>, IDOC# 28 6137 is currently and was at all times relevant herein incarcerated at Westville Correctional Center ("WCC") -5501 South 1100 West, Westville, Indiana 46391

2. Defendant Indiana Department of Correction ("IDOC") oversees the safety and security operations at WCC-302 West Washington Street, Rm E-334, Indianapolis, IN 46204.

---

[1] A complaint is "verified" if it is "signed, sworn, and submitted under penalty of perjury." <u>James v. Hale</u>, 959 f.3d 307,314 (7th cir. 2020)

3. Defendants Robert Carter, Jr.,
James Basinger, Jon Adam Ferguson are employed by IDOC
and assigned to Central Office in various positions - 302
West Washington Street, Rm E-334, Indianapolis, IN 46204
    4. Defendants John Galipeau, Kenneth
Gann, Kenneth Watts, Major Cornett, Joseph Farley, Phil Sonnenberg
are employed by IDOC and assigned to WCC in various
positions. - 5501 South 1100 West, Westville, IN 46391.
    5. Defendants were acting under color
of state law, at all times relevant to the claims herein.

## III. Jurisdiction & Venue:
    6. This Court has original jurisdiction
pursuant to 28 U.S.C. §§1331 and 1334 over Plaintiff's
cause of action under the Constitution of the United States,
42 U.S.C. §1983, and pursuant to the Declaratory Judgment
Act, 28 U.S.C. §§ 2201 and 2202.
    7. Plaintiff's claims for injunctive
relief are authorized by Fed. R. Civ. P., Rule 65. Venue lies
in the U.S. District Court for the Northern District of Indiana
because the majority of the defendants work/reside in
the Northern District, 28 U.S.C. §1319 (b)(1)-(2) & (c)(1).
Divisional revue is the South Bend Division because the
events leading to the claims for relief arose in LaPorte County.

## IV. Previous Lawsuits by Plaintiff:
    8. Plaintiff has filed NO other lawsuits
dealing with the same exact facts relating to his imprisonment.

## V. Exhaustion:
    9. Plaintiff has exhausted all available
remedies to him with respect to all claims.

10. On May 7, 2022 Plaintiff submitted attached Exhibit "A" to the Grievance Specialist via the Grievance box in the GSC dining room hallway as well as institutional mail.

11. On May 14, 2022 pursuant to IDOC policy 00-02-301, Plaintiff submitted attached Exhibit "B" to the Grievance Specialist via institutional mail, requesting a copy of the confirmation receipt for the Grievance Plaintiff submitted described supra ¶ 10.

12. On May 21, 2022 pursuant to IDOC policy 00-02-301, Plaintiff submitted attached Exhibit "C" to the Grievance Specialist via institutional mail, requesting a copy of the appeal form because he had not received a response to the grievance Plaintiff submitted described supra ¶ 10, nor did he receive a response to the request for a copy of the confirmation receipt for the grievance Plaintiff submitted described supra at 10. Plaintiff never received a response to Exhibit "C"

13. Grievance Appeal forms are not available in the law library only from the Grievance Specialist.

### VI. Factual Allegations

14. On April 4, 2021 Plaintiff had back surgery

15. Plaintiff is severely limited in doing daily activities like jumping and bending due to his back surgery. Plaintiff has been assigned a Bottom Bunk Pass because of his back surgery. This Bottom Bunk Pass was active and in effect at all times relevant herein. IDOC prisons receiving some federal funding.

16. Plaintiff is A Qualified Disabled Person pursuant Americans With Disabilities Act and Section 504 of the Rehabilitation Act.

17. Because Plaintiff's ADA claim arises after January 1, 2009, the ADA Amendment Acts of 2008 ("ADAAA") applies. 42 U.S.C. §12181.

(A) Plaintiff Assignment to GSC's 3 dorm

18. On March 29, 2022 Plaintiff was transferred from R-dorm to WCC's 3 dorm.

19. Plaintiff was assigned to (3-S3-4L) lower bunk occupied by another inmate at the time

20. The inmate that occupied Plaintiff's assigned bunk was not authorized to be there.

21. The majority of inmates in 3 dorm do not live in their assigned bunks, which is common knowledge amongst staff and inmates who live on GSC.

22. Because Plaintiff did not want be assault to/be snitching in the eyes of other inmates and involve IDOC staff assigned to the housing unit Plai politely requested the inmate to move. This reques was denied.

23. Plaintiff was then forced to sleep in a bunk assignment other than his on a top bunk, wh caused Plaintiff unnecessary pain and suffering.

24. By IDOC staff assigning Plaintiff to a dorm that they knew inmates regularly were in bunks unassigned to them and prevented Plainti

page #4 of #14

from sleeping, which is a daily activity protected by the ADAAA of which Plaintiff was reasonably accomodated by in receiving a Bottom Bunk Pass, It can reasonably be inferred that Plaintiff was discriminated against.

25. Upon transfer to WCC Plaintiff was assigned a grey Norex box with a combination lock to "secure" his personal belongs.

26. Defendants in this case are aware from prior grievances, tort claim notices, lawsuits and incident reports that these grey Norex boxes can easily be forced open.

27. Another IDOC prison added a second padlock to the back side of these grey Norex because of the ease at which these Norex boxes were being broken into.

28. While on 3-dorm Plaintiff was classified as a Level 1-Outside ("1-0"). The lowest security level in IDOC, while inmates on 3-dorm were classified a Levels 2,3,&4.

29. Plaintiff was unaffliated and had less time on his sentence than the majority of inmates on 3-dorm.

30. While on 3-dorm Plaintiff received a large (#300plus) Union Supply order. This order was larger than the majority of other inmates on 3-dorm.

31. At all times relevant herein Plaintiff "secured" his commissary and Union Supply orders within the grey Norex box with the padlock, LOCKED.

page #5 of #14

32. On April 29, 2022, Plaintiff was attacked while sleeping on 3-dorm and robbed of all his belongings, by at least six (6) other inmates.

33. The grey Norel box which had previously been locked by Plaintiff was broken into.

34. As a result of this attack Plaintiff received at least one broken rib.

(B) IDOC's Deliberate Indifference In GSC[2]

35. Defendants Carter, Basinger, Ferguson, Galipeau, Gann, Watts, Cornett, Farley, and Sonnenberg know from the hundreds of grievances, tort claim notices, complaints, lawsuits, Requests for Protection, and violence associated conduct reports over the last few years that WCC's General Services Complex ("GSC") is one of, if not the most volatile housing units for inmates and staff within IDOC prisons statewide.

36. GSC essentially is a snakepit where inmates and staff are regularly assaulted.

37. GSC is chronically understaffed and under monitored despite defendants IDOC, Carter, Basinger, Ferguson, Galipeau, Gann, Watts, Cornett, Farley and Sonnenberg knowing that it is arguably the most violent housing unit in IDOC's prison system.

38. IDOC staff that are assigned to Property Room, Disciplinary Hearing Board, and Case Workers

[2] "GSC" is General Services Complex in WCC.

are routinely pulled from those duties (which pauses and/or cancels what those individuals were planning on accomplishing that day) to fill in vacant spots.

39. The majority of WCC and GSC is open dormitory style housing. As is 3-dorm.

40. It has been known for decades of the dangers of open dormitory housing for prisons, in the federal court system. See Fisher v. Koehler 692 F.Supp. 1519, 1546-47, 1562 (S.D.N.Y. 1988), aff'd, 902 F.2d 2 (2d Cir. 1990); Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644-45 (8th Cir 1996) (noting dangers of open barracks); Winton v. Board of Commissioners of Tulsa County, Okla., 88 F.Supp 2d 1247, 1266 n.13, 1268 (N.D. Okla. 2000) (noting evidence that violent offenders should be kept in cells rather than open dormitories); Ruiz v. Estelle, 503 F.Supp. 1265, 1282 (S.D. Tex. 1980) (noting particular dangers of dormitories), aff'd in pertinent part, 679 F.2d 1115 (5th Cir. 1982)

41. GSC housing units regularly only have one correctional officer on the housing unit the majority of the time, despite GSC being the most volatile complex in WCC.

42. These open dormitories at WCC and in GSC have bunk beds that limit sight lines for staff. See Fisher v. Koehler, 692 F.Supp. at 1549, 1562 (inadequate staffing, poor sight lines aggravated by double bunks); La Marca v. Turner, 662 F.Supp 647, 657-58 (S.D. Fla. 1987) (similar to Fisher), vacated and remanded on other grounds, 995 F.2d 1526 (11th Cir. 1993); Ramos v. Lamm, 485 F.Supp 122, 156 (D. Colo. 1979) (architectural "blind spots"), aff'd in pertinent part, 639 F.2d 559 (10th Cir. 1980); F. Cher v. Winter, 564 F.Supp.

281, 292-93 (N.D. Cal. 1983) (double bunks in dormitories).

43. In mid to late 2020 several hundred, violent or higher security level inmates were transferred to WCC, most to GSC, and are still being transferred to WCC's GSC. This has added to the dangers of GSC

44. Despite having security cameras, WCC only allows custody staff with the rank of Lieutenant or higher to access them.

45. With at most one (1) Lieutenant and one (1) Captain assigned per twelve (12) hour shift to GSC, this prevents continued or even significant monitoring. When the Lieutenant or Captain is absent on any shift, there's even less monitoring.

46. The combination of the lack of adequate staffing and supervision of inmates in GSC with the ease of theft of personal belongings has fueled the violence in GSC.

47. Carter, as the commissioner is a duly elected official charged with overseeing the daily operations of state prisons in Indiana and is responsible for the health and well being of the persons confined therein. In that capacity, the commissioner acted under the color of and pursuant to authority vested in him under the Indiana Constitution. His acts and/or edicts may fairly be said to represent the official policies of the State of Indiana and Indiana Department of Correction. At all times material hereto the commissioner acted under and pursuant to the laws, ordinances, policies, practices, customs, regulations, and usages

of the IDOC, the commissioner is obligated to train and cause to be adequately trained the persons employed as staff responsible for the supervision, safety and security of inmates in the state prisons, in Indiana, including but not limited to the Westville Correctional Center, to ensure compliance with local, state, and federal civil rights law.

48. Basinger, as the Deputy Commissioner, employed by IDOC and assigned to Central Offices while relevant events were ongoing.

49. Ferguson, as the Chief Legal Officer employed by IDOC and assigned to Central Offices while relevant events were ongoing.

50. Galipeau, as the Warden employed by IDOC and assigned to WCC while relevant events were ongoing.

51. Gann and Watts, are the Deputy Wardens employed by IDOC and assigned to WCC while relevant events were ongoing.

52. Cornett, as the Major and highest ranking custody officer employed by IDOC and assigned to WCC while relevant events were ongoing.

53. Farley, as the Lead Captain and second highest ranking custody officer employed by IDOC and assigned to WCC while relevant events were ongoing.

54. Sonnenberg, as the Complex Director of GSC, employed by IDOC and assigned to WCC while relevant events were ongoing.

55. At all relevant times Basinger, Ferguson, Galipeau, Gann, Watts, Cornett, Farley, and Sonnenberg acted pursuant to the official policies, practices, customs, usages, and training (or lack thereof) of IDOC and the commissioner, and their acts and/or edicts may fairly be said to represent those policies, practices, customs, useages, and training.

56. Carter, Basinger, Ferguson, Galipeau, Gann, Watts, Cornett, Farley, and Sonnenberg each in their respective positions for the State of Indiana had the authority, means, and opportunity to address the understaffing and under monitoring of inmates and staff at GSC, as well as address the ease at which inmates force open the grey Norex boxes issued to WCC inmates to store their personal belongings, which has led to its high volatility. They have not taken steps or adequate action to reduce violence, which was a moving force behind ~~the~~ Plaintiff's injuries.

57. Defendant Carter, Basinger, Ferguson, Galipeau, Gann, Watts, Cornett, Farley and Sonnenberg have violated Plaintiff's Eighth Amendment rights.

## VII. No Valid Penological Objective

58. Administrative convience, an attempt to immunize oneself from public scrutiny, mistake, inadvertance, discrimination and suppress of free speech are not legitimate penological objectives.

page #10 of #14

59. Defendants' actions were arbitrary and capricious, and they were unnecessary to the maintenance of order in the institution.

60. The conditions of Plaintiff's confinement at WCC deprived Schoch of life's necessities by depriving him of the right to be free of cruel and unusual punishment.

61. As a direct and proximate result of the acts and omissions of the Defendants, Schoch suffered the following injuries and damages.

(a) Violation of his constitutional rights under the Eighth Amendment to be free of cruel and unusual punishment;

(b) loss of physical liberty;

(c) Mental and emotional anguish;

(d) Medical expenses;

(e) irreparable harm; and

(f) additional financial losses, including costs associated with enforcing his civil rights pursuant to 42 U.S.C. §1983, 42 U.S.C. §12101 et seq, and the laws of the State of Indiana.

62. The acts and omissions of the Defendants violated the following clearly established and well settled federal constitutional rights of Schoch

(a) Freedom from punishment

page #11 of #14

without a legitimate penological basis;
(b) Freedom from not being discriminated against;
(c) Freedom from not being retaliated against for exercising my First Amendment rights;

63. At all relevant times, Carter, Besinger, Ferguson, Galipeau, Watts, Gann, Cornett, Farley, and Sonnenberg were acting under color of law. Defendants acted maliciously, wantonly, willfully and to benefit themselves personally.

VII   Statement of Claims:

Count #1 & #2 (ADA Discrimination)
(42 U.S.C. §12101 et seq and 29 U.S.C § 794)
(against IDOC)

64. Plaintiff incorporates by reference all previous paragraphs as if restated here
65. Defendant IDOC discriminated against Plaintiff by placing Plaintiff in a housing assignment without there be a real expectation of Plaintiff being able to receive a Bottom Bunk.
66. Plaintiff's denial of a reasonable accommodation for his disability violated the Americans With Disabilities Act Amendments Act and Section 504 of the Rehabilitation Act.